## Elizabeth F. McCombs, Appellant, v. The City of Pittsburg.

*Road law—Damages—Opening streets—Change of grade.*

In estimating the damages caused by opening a street through a tract of land, irregular in shape on the surface, at some places much higher, at others much lower than the adjacent streets, allowance cannot be made for the cost of filling and removal that may be necessary to bring the property fronting on the street into conformity with the grade of the street as established by the city.

Argued Oct. 27, 1899. Appeal, No. 117, Oct. T., 1899, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1897, No. 726, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Appeal from report of viewers. Before McCLUNG, J.

The facts appear by the opinion of the Supreme Court.

At the trial it appeared that plaintiff claimed damages from the defendant for injuries to property alleged to have been caused by the opening of Homewood avenue. The evidence showed that plaintiff's land was very irregular in shape on the surface. R. L. McCully, a witness for plaintiff, was asked this question:

" Q. Now, you say you have calculated the amount of grading and removal there that would be necessary to bring the McCombs property, fronting on Homewood avenue, into conformity with the street? How much would that amount to?"

Objected to as incompetent.

Mr. O'Brien, of counsel for plaintiff: I mean, now, how much grading, not how much in money?

The Court: Under the facts in this case, this would not enlighten the jury any; it would be more likely to mislead than to aid.

The objection is sustained, exception for plaintiff allowed and bill sealed. [1]

Another witness for plaintiff testified as follows:

"Q. Where do you live? A. I live in the twentieth ward, Fairmount avenue. Q. What is your business? A. Contractor. Q. Do you do grading and filling and that kind of work? A. Yes, sir. Q. Do you know this McCombs property? A. Yes, sir; I have been over it. Q. You have carefully examined it, have you? A. Yes, sir; I went over it with Mr. McCully and examined the points of it preparatory to giving a bid on it. Q. Well, referring back to 1896, when this grade was established, what do you say it would cost to put the McCombs property down into shape with the established grade?"

Objected to as incompetent.

The Court: Under the facts of this case, we think the answer to the question could not enlighten the jury, at least, without leading out to an extent that it is impracticable to go in the inquiry. The objection is sustained, exception for plaintiff allowed and bill sealed. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions.

*Charles A. O'Brien*, with him *W. S. Thomas*, for appellant, cited Patton v. Philadelphia, 175 Pa. 88, and Darlington v. Allegheny City, 189 Pa. 202.

*T. D. Carnahan*, with him *Clarence Burleigh*, for appellee.

OPINION BY MR. JUSTICE GREEN, January 2, 1900:

In this case a street car company had laid its tracks on the bottom of a cut through the plaintiff's land, and this cut was the space covered by the route of a street called Edgerton avenue. Edgerton avenue was never laid out by the city, and was in fact never opened. But Homewood avenue was laid out by the city, and covered the same ground as Edgerton avenue, and was ordered to be opened by city ordinance, approved by the mayor September 18, 1896. Viewers were appointed to assess damage and benefits under the act of 1891, and they reported no damage and no special benefits. From this report the plaintiff appealed and demanded a jury trial. The jury found a verdict for the

defendant, thus showing that in their opinion the plaintiff has sustained no damage, and the present appeal is taken from the refusal of the court below to admit two offers of testimony to show how much grading would be necessary to bring the property fronting on Homewood avenue "into conformity with the street," and how much it would cost to put the property down to the established grade.   A number of witnesses was examined on both sides to prove the value of the property, before and after the opening of the street, and a very wide divergence of opinion among the witnesses was developed by the testimony.   The witnesses for the plaintiff testified to a very considerable amount of damage, and were examined and cross-examined very fully on every aspect of the subject affecting the difference of value, and the witnesses for the defendant were also very fully examined upon the same subject, and gave their reasons for the conclusions they expressed, including the cost of lowering the property to the grade of the street and making the fills to raise up the depressed portion of the ground also to the level of the street.   In the course of the examination of plaintiff's witnesses counsel for the plaintiff offered to prove the quantity " of grading and removal that would be necessary to bring the McCombs's property fronting on Homewood avenue into conformity with the street," and by another witness the cost of such work.   Both offers were rejected, and two assignments of error are made to this action of the court.

It was proved without any question that a cut had been made through the property some years before by a street railroad company which laid a railroad at the bottom of the cut which was about thirteen feet below the surface, and further on had made a fill some eight or ten feet high to continue the grade.   This was the condition in which the city found the property when Homewood avenue was laid out and ordered to be opened.   Nothing had ever been done to lower the property nor to fill it to the grade of the railroad.   The city established the grade of the street through the cut, about nine feet lower at the deepest point, and about four feet higher at the highest point, than the grade of the railroad.

The undisputed evidence showed that the plaintiff's land, containing about twenty-two acres, was very irregular in its shape on the surface.   At some points it was much higher than the adjacent streets and at other points it was much lower, and in

point of fact it did not conform to the grade of any of the streets which were laid out around it and through it. At one point it was so low as to be marshy, with bulrushes growing along it. It was very evident that to make the property eligible for sale in lots, very much grading and filling of the surface of the ground would have to be done. But that, of course, was due to the uneven condition of the ground in its natural state, and it was certainly not the duty of the city to incur the expense of this grading and filling, and thereby greatly enhance the value of the property for the benefit of the owner. The liability of the city to pay for any difference in the value of the property through which streets were opened before and after the time of the opening was not disputed, and the amplest opportunity to prove such difference was given to witnesses on both sides. But to prove the cost of removing a portion of the elevated ground so as to make it level with the street, or of filling in another place so as to raise the level of the natural surface to the level of the street, is quite a different matter. This plaintiff's property was not only surrounded by streets, but it was penetrated by several other streets running through it, not yet opened. If the city is bound to pay the expense of grading the property to the level of all the streets it would certainly be a great pecuniary benefit to the owner, but it would require the adoption of a new rule, never before heard of in the adjustment of damages for the opening of streets. It would be compelling the city to establish a condition of the property which never before existed as the measure of its obligation, and it would certainly give rise to a most complicated and intricate class of questions which no jury and scarcely any court could adequately solve. We have just expressed our views on this subject in the case of Mead v. City of Pittsburg, infra, p. 392, in a case of similar character, and it will not be necessary to repeat them here. We are satisfied that the learned court below properly rejected the offers of proof in question. The verdict was entirely in accord with the great weight of the testimony. The assignments of error are dismissed.

Judgment affirmed.